The McCall Co. v. W. D. Hughes. `

[59 South. 794.]

Monopolies. *Recovery for goods sold. Contract.*

> While a contract under which goods are sold may not be enforceable
> because violative of the anti-trust statute, this does not relieve
> the buyer from the payment for goods received and sold by him
> in due course of trade, because he had entered into a contract
> in restraint of trade.

Appeal from the circuit court of Jackson county.
Hon. Geo. S. Dodds, Special Judge.

Suit by McCall Company against W. D. Hughes. From
a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Denny & Denny,* for appellant.

In *The Bank of Newberry* v. *Stegall,* 41 Miss. 142, it
was held that if one part (of a contract) is good, and
can be separated from the bad, the whole will not be
held void, and to bring the case within the rule invoked,
the matter must be entirely independent of the bad.

The instant case is in full accord with such rule. The
consideration for the contract was the promises of Mc-
Call Company to sell and deliver and of Hughes to re-
ceive and pay for. It is not provided that such promises
were contingent upon the two stipulations mentioned or
that there would be a breach of the contract or that same
would become void by the failure of Hughes to observe
same.

At the most the stipulations complained of by appellee
were mere matters of inducement or persuasion con-
tained in the offer of appellee, doubtless, with intent
to aid in securing assent of appellant to the proposition
of selling its patterns to appellee. Appellee voluntarily

offered to do the very things that he now says rendered the contract void and ineffective. Upon his promise to pay for patterns mentioned in his offer the appellant was induced to deliver goods to him to the value of more than nine hundred dollars, the promises to sell and deliver and to pay for being separate and distinct from the stipulations involved and in nowise dependent upon or connected with same, and now that appellee has defaulted in his promise he is undertaking to deprive appellant by virtue of his, appellee's own wrong. His position is unconscionable to say the least.

It is quite clear that the stipulations involved in second and third pleas of appellee form no part of the consideration for the contract and, if the court is inclined to hold that such stipulations are bad, then we say that such should be eliminated from the contract and appellee's promise to pay enforced as though such mere matters of inducement, made by appellee, had never been in contract.

The contract between appellant and appellee has been executed. The goods have been delivered to and received by appellee and he has paid a material part of the purchase price for same. In the case of *Andrews et al. v. New Orleans Brewing Association*, 74 Miss. 362, 20 So. 837, this court declares that one party to a contract which had been executed and who had been benefited thereby cannot plead its illegality in a suit to recover thereon. In the case just cited the defense was based on the fact that appellants there had not paid the privilege tax due the state for conducting business of wholesale dealer in malt liquors, and this court in its opinion said:

"Without expressing any opinion as to the illegality of the business carried on in Vicksburg by the appellee under its arrangements with the Vicksburg Liquor & Tobacco Company, it is clear that such illegality may be conceded, and yet the appellee's right to recovery is not

affected thereby. For, conceding the illegality of the business, the question still remains whether the appellant's company can be allowed to receive for the appellee's use money which arose out of the illegal transaction then consummated and ended, and retain it as against the appellee, for and on whose account it was received. It is unnecessary to discuss the question, for it was long ago carefully and elaborately examined and definitely settled in this state in *Gilliam* v. *Brown*, 43 Miss. 641. Said the court in that case: "The principle seems to be well established that, after the illegal contract has been executed, one party in possession of all the gains and the profits resulting from the illicit traffic and transaction will not be tolerated to interpose the objection that the business which produced the fund was in violation of law, and therefore the plaintiff, jointly interested in its gains and profits, cannot ground any claim to an account and share thereof." In *Howe* v. *Jolly*, 68 Miss. 323, 8 South. 513, *Gilliam* v. *Brown*, was cited and followed, and this question declared to be completely settled by that case.

In the case at bar the appellee has received from appellant all the benefits he was entitled to under the contract, which is one of partnership more than of bargain and sale, and, having fully enjoyed, is seeking to say that the contract was illegal and illegal because of his own acts and through no fault of appellant.

The learned judge of the circuit court in overruling demurrers of appellant, relied upon the case of *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.*, contained at pages 276-387 in advance sheets, No. 9 of date May 1, 1911, of opinions of the United States Supreme Court (semimonthly numbers).

In the last above mentioned case there was a contract between Dr. Miles Medical Co. and John D. Park & Sons Co. for the sale of certain medicines, in which it is provided that the goods should be sold at prices fixed by the

medical company. It was alleged in the complaint that all wholesale and retail druggists "and all dealers in proprietary medicines," had been given full opportunity without discrimination, to sign contracts in the form stated, and that such contracts were in force between the complainant "and over four hundred jobbers and wholesalers and twenty-five thousand retail dealers in proprietary medicine in the United States."

The contract in that case was vastly different from the contract in case at bar. There the stipulation for fixing the price was a material part of the consideration and there was in fact a combination affecting the trade in medicine involved throughout the United States, whereas the stipulations complained of in contract in case at bar formed no part of the consideration and are but mere matters of inducement made by appellee in his offer to purchase the goods of appellant.

Another and very material difference between the case of *Dr. Miles Medical Co.* v. *John D. Parks & Sons Co.,* *supra,* and the case at bar is that the purpose of that suit was to enforce that part of the contract by injunction to prohibit sale of the goods at prices other than those contemplated by the contract, while in the case at bar the only end sought is payment of the value of goods purchased and received by appellee and we submit that the decision rendered by Justice Hughes merely holds that the medical company was not entitled to enforce that feature of their contract affecting prices. It is not stated there that appellee was relieved of his obligation for the goods.

Appellee Hughes received the goods of appellant and has doubtless profited greatly thereby. To permit him to acquire, hold and use the goods of other persons in the manner that he is attempting in this case would be unconscionable to say the least, in fact it would enable appellee to perpetrate a fraud that the law of Mississippi will not countenance and that this court will not tolerate.

*Ford, White & Ford,* for appellee.

It is idle for counsel to insist that these objectionable provisions were not a material part of the contract. They are just as much a part of the contract as any other provision of it and the original and amended declaration in this cause demanding the penalty clause provided for, shows exactly what parts of it the appellant insists upon enforcing.

The cases of *Andrews* v. *Brewing Association,* 74 Miss. 362; *Howe* v. *Jolly,* 68 Miss. 323, and *Gilliam* v. *Brown,* 43 Miss. 641, have no sort of application to the question under consideration here. If in the case of Andrews against the New Orleans Brewing Association there had been a written contract between Andrews and the association providing that Andrews should sell the beer contracted for without procuring a license and in defiance of law and a stipulation that in case Andrews did not pay for all the beer he received that the association was authorized to penalize him by requiring him to pay a sum equal to the contract value of all the beer that he would handle during the life of the agreement, it would present a case something like this one. If such a contract had been sued upon and attempted to be enforced in the courts another result would have followed than did follow the litigation that the parties were actually engaged in. And yet such a contract would have been just as much executed, as the one here. In those cases the parties were not suing upon any illegal contract, but were suing for money, and where the defendant undertook to engage in an illegal traffic. The contract in this case is the very basis of the plaintiff's suit, and in fact until it abandoned the penalty claim, it set up this contract as constituting the obligation binding the appellee to pay the sum of money demanded. If counsel's argument would hold good that a party can never be permitted to plead the illegality of a contract without paying the contract price for goods sold under

it, such a rule would necessarily repeal the anti-trust statute of the state. Appellant says that in this case they are not seeking to enforce the contract, but merely to recover for goods sold. But the trouble about it is the goods were sold under this illegal arrangement, and the price to be paid is necessarily burdened with the obnoxious provisions of this contract. How could the court below know that the appellee derived any benefit from this, the purchase of these goods. The presumption that on account of this illegal feature of it that the appellee was imposed on and forced to agree to pay the prices which were not only unfair, but illegal, oppressive and unjust.

Counsel insist that the case of *Dr. Miles Medicine Co.* v. *John D. Parks & Sons Co.* was a mere injunction to enjoin the medicine company from carrying out the provisions of the illegal contract. If a suit had been brought upon it by the company and the court had held it, the contract, illegal, no action could, of course, have been maintained upon it. The Supreme Court of the United States had shortly before the decision of this case in the case of the *Continental Wall Paper Co.* v. *Louis Voight & Sons Co.*, 280 U. S. 212, 53 L. Ed. 486, held in express terms in a suit brought to recover many thousands of dollars for goods sold and delivered and where the defendant pleaded the illegal contract in defense of the recovery that the illegality of the contract would prevent their recovering for the goods sold. This rule as we understand it is universal in its application. The wail of the appellant in this case that it was induced to make this contract by the appellee making a proposition to it, is the voice of every monopolist in the United States that has been caught up to this date. They all, even including the gigantic Standard Oil Company Trust, not only claim that they are the friend of the consumer, but were the victims of a conspiracy by the public against them. We do not feel that much sym-

pathy should be wasted upon a party who goes over the country with a bag full of printed contracts, in the form of a proposition for others, who is induced to part with his goods, by some country merchant, who signs the agreement and is too ignorant to understand what it means. We respectfully insist that a contract more oppressive in its operations could not be written than the one sued on in this case. A contract which binds the buyer to pay a fixed price during its operation, the seller reserving the right to fix the price at which the buyer shall sell his own goods, and providing for the sale of a commodity whose merchantability, or marketability, changes with the seasons, and almost from month to month, with no provision by which the unfashionable or worthless articles can be received back, with a drastic penalty attachment providing that ''liquidated damages'' equal to the profit which the seller expected to make out of the entire contract, and winding up with so-called guarantee against loss, which is absolutely meaningless, is we say so manifestly and outrageously unfair and oppressive that courts should be slow to enforce such an agreement. But this contract is so plainly within the provisions of our statute which attempts to secure to the people freedom of competition, that further argument of the question is unnecessary.

Cook, J., delivered the opinion of the court.

Appellant filed its declaration against appellee, alleging that it had sold to appellee certain patterns at certain fixed prices, and filed with his declaration a written contract, by the terms of which appellee bound himself to sell the patterns of appellant, and none other, in the town in which he was engaged in business. This contract was to extend over a period of two years, and the patterns were to be sold at a price to be fixed in the catalogue of appellant company, to be issued from time to time. Recovery was sought for the value of the pat-

terns at the contract price, together with a penalty, which was termed "liquidated damages." To this declaration appellee demurred, upon the ground that the contract set out in the declaration was in violation of the anti-trust statute of the state; the provisions of the contract binding appellee to sell no other patterns than those of appellant for a term of two years, and to sell the patterns at prices to be fixed by appellant, tending to create a monopoly and being in restraint of trade. The trial court sustained the demurrer to the declaration.

Appellant then filed an amended declaration, simply declaring upon account of goods sold and delivered to appellee, and omitting all claims for the alleged penalty for a violation by appellee of his contract filed with the original declaration. Appellee filed pleas to this amended declaration, averring: (1) That the contract relied upon by the plaintiff in the case was the same contract set out in his original declaration, and that the terms of the same were unenforceable, because said contract provided that defendant should sell only patterns manufactured and sold by plaintiff, and called "McCall's patterns;" and (2) that the contract was unenforceable and violative of the anti-trust laws of the state, because defendant was required under said contract to sell the patterns of plaintiff only at such prices as should be fixed by plaintiff in its catalogue, without any reference to the cost of manufacture, the law of supply and demand, or the selling price of like commodities by defendant's competitors. Plaintiff demurred to these pleas. The demurrer was overruled, and, plaintiff declining to plead further, the suit was dismissed; therefore, this appeal.

It is insisted by appellee that plaintiff could not invoke the aid of the court to recover for patterns which had been sold and delivered to defendant under the terms of the contract, because the clauses of the contract obligating defendant to sell no other patterns, and to sell at prices to be fixed by the plaintiff, were in violation

of the anti-trust statute.   If appellant was seeking to enforce the terms of the contract challenged by appellee, we may concede the soundness of appellee's conclusion; but does it therefore follow that he should be absolved from paying for the goods purchased and probably sold in due course of trade, because he had entered into a contract in restraint of trade?   So far as the sale and delivery of the goods is concerned, the contract was executed, and, according to the averments in the declaration, defendant himself sought to revoke the contract as to the time limit, but declined to pay for the goods which had been purchased.   Common honesty demands that defendant should pay for the goods purchased, and he cannot shelter himself behind the provisions of the anti-trust statute against certain provisions of the contract which it is not sought to enforce.   It may be true that the terms of the contract which are set up to defeat recovery could not be enforced in a suit filed for that purpose; but the question here is an entirely separate and distinct question from this, and is in no way affected by the anti-trust statute.   Conceding the invalidity of the two clauses of the contract referred to, nevertheless, the remainder of the contract is enforceable.   *Andrews* v. *Brewing Association,* 74 Miss. 362, 20 South. 837, 60 Am. St. Rep. 509; *Fleckenstein Bros. Co.* v. *Fleckenstein,* 76 N. J. Law, 613, 71 Atl. 265, 24 L. R. A. (N. S.) 913; *Central Tel. Co.* v. *Averill,* 199 N. Y. 128, 92 N. E. 206, 32 L. R. A. (N. S.) 494, 139 Am. St. Rep. 878.   Appellee for about two years received the benefits of and profited by the contract; but when he decides to discontinue his business with appellant, and appellant demands payment for goods sold, the answer is: "We have been violating the law for two years, and I have decided to reform my ways, but will retain the gains of our illicit and illegal relations, and you must satisfy yourself with the losses."

Reversed and remanded.

*Reversed and remanded.*