McCall Company *v.* Parson, May, Oberschmidt Company.

[66 South. 274.]

1. Evidence. *Parol evidence to vary written contract. Novation. Substitution of new debtor. Incomplete. Negotiations. Sales. Construction of contract. Return of goods.*

Where plaintiff and defendant entered into a five-year contract for the purchase of patterns by defendant from plaintiff, which provided that two hundred and fifty dollars of the purchase price of patterns ordered at the date of the contract should remain as a standing credit during the term of the contract, and that interest should be paid thereon semiannually, it could not be shown by parol evidence that plaintiff's agent stated that defendant would not be called upon to pay this sum, but that, at the expiration or discontinuance of the contract, patterns might be

107 Miss. 55

returned in settlement thereof, since such evidence was simply an attempt to vary by parol the terms of a plain and unambiguous contract, nor was such evidence admissible as showing that the contract was induced by false representations.

2. Novation. *Substitution of new debtor. Incomplete negotiations.*
   . Where defendant, who had contracted to purchase patterns from plaintiff for five years, discontinued business and thereupon, plaintiff's agent, defendant, and a third party entered into an agreement that defendant should be released from liability on the contract; that its stock of patterns should be turned over to the third party, who, with certain modifications would assume the contract, but this contract was to be submitted to plaintiff for his approval and was approved by plaintiff, and returned for the signature of defendant and the third party, who repudiated it on the ground that it differed from the agreement made by the agent; defendant was not relieved from liability on the original contract thereby, even though the agent was authorized to enter into a contract of that character, since he did not assume in this matter to exercise such authority.

3. Sales. *Construction of contract. Provisions relative to return of goods.*
   Under a five-year contract for the purchase of patterns by defendant from plaintiff, providing that patterns reported by plaintiff as discarded might be returned and exchanged for other patterns and should be credited to a discard exchange account, the credit to continue for six months, and all patterns ordered within such period, excepting the monthly standing order, to be charged to such account unless the account was exhausted, where the purchaser on several occasions failed to order a sufficient number of new patterns within the six-months period to exhaust its credit for those returned, it was not entitled to have the balance credited to its regular monthly order or on its indebtedness on account of the initial order for patterns which was to be carried during the term of the contract, since the contract in express terms provided otherwise.

4. Monopolies. *Illegality of contracts of sale. Recovery of purchase price.*
   Even though a contract providing that "we will not sell any other patterns than the McCall Patterns received from you during the term of the contract order," violates our anti-trust laws, still the purchaser is not released thereby from the payment of the amount due by it for patterns received.

Appeal from.the circuit court of Lincoln county.

Hon. D. M. Miller, Judge.

Suit by the McCall Company against the Parson, May, Oberschmidt Company. From a judgment for plaintiff for insufficient relief, it appeals and the defendant cross-appeals.

The facts are fully stated in the opinion of the court.

*M. McCullough,* for appellant.

There may be elements of untruth or falseness in a statement by an agent that a written contract meant so and so, but in such statements there may not be any fraud practiced on the opposite party. At least his plea must set up the fraudulent practices with certainty and detail. In every plea where special matter, not set up in the pleading of the opposite party is relied on as a defense the pleader must not be content by alleging this new matter in a general way, or by a general plea, but must sufficiently plead such matter setting it up in detail giving the actual ground of defense. In the case of *Tittle* v. *Bonner,* 53 Miss. 578, *et seq.,* the court after giving pretty fully why a plea of fraud must be set out in particularity as to the acts of fraud, among other things, says: "The true object of pleadings is to apprise the adverse party of what he is called upon to answer, in order that he may be prepared to contest it, and may not be taken by surprise; and any pleadings which fall short of this is bad. A plea averring fraud and misrepresentation, without any indication of the particulars in which it is said to consist, is bad on demurrer." *Herndon* v. *Henderson,* 41 Miss. 584; *Hanks* v. *Neal,* 44 Miss. 212; *Wren* v. *Hoffman,* 41 Miss. 616; *N. O. R. Co.* v. *Wallace,* 50 Miss. 244.

If there had been vagueness or uncertainty or ambiguity in the words and phraseology of the contract, then there is a line of authorities admitting, and I think rightly, oral evidence to show the real meaning intended by the contracting parties. On this line see, *Thayer Export*

*Lumber Co.* v. *Naylor,* 100 Miss. 841; *Kerl* v. *Smith,* 96 Miss. 827; 4 Wigmore, 2461-2465.

However, the case here presented does not, in my judgment, involve the construction of a contract where the terms are ambiguous, doubtful, or needing of explanation. Every provision of the contract-order is couched in simple plain English, capable of one and only one meaning or construction. The first instruction given the appellee is based on the testimony of the witness Parsons as to these fraudulent inducements. If my argument is sound, then all this testimony should have been excluded.

Another fatal objection to this instruction is that it assumes that Wright was the legal representative of the appellant. This instruction does not state the law correctly. It should instruct the jury as to whether or not they believe from the evidence that Wright was the authorized agent of the appellant. This instruction should include the idea that if they believe false representations were made and relied on by appellee, and that such false representations were believed and relied on as inducement to execution of the contract. The jury is not, in this instruction, told what to believe before they can say any agent of appellant was "empowered to make contracts." In this case there is no proof to show agency or Wright save what appellee's witnesses say Wright said from his own mouth. There must be other circumstances, other than the alleged agent's statements to prove agency.

Referring again to the admission of evidence to vary or explain the contract sued on in this case, I submit that our law directs that all provisions of a contract must be construed together and the purpose determined from the whole of it; and that in this case the purpose of the contract is to make the appellee liable to appellant for the payment of the entire purchase price of the goods delivered. *Spengler* v. *Stiles, Tull Lbr. Co.,* 94 Miss. 780; *Heard* v. *Garritt,* 34 Miss. 152.

A written contract, plainly written and not doubtful and ambiguously stated, must be construed by the court and not by the jury. *Fairly* v. *Fairly,* 38 Miss. 280.   In any case where the sources of information are open to all the parties alike in relation to any written contract, then each tub sits on its own bottom, and such a contract, is not voidable and testimony to vary its terms is inadmissible. *Sample* v. *Bridgford,* 72 Miss. 293.

In the second assignment of error I must insist on the reason for the admission of evidence, already given, and the argument already presented to sustain my view that the instruction is bad, in this case, first because there is no proper evidence in the record to support it and, secondly, because the instruction fails to state the law properly to the jury.   This instruction assumes that the salesman who succeeded in placing the contract for appellant with the appellee was the legal representative of the appellant.   It should say to the jury, if you believe from the evidence that the salesman who placed the order or induced the execution of the contract was the legal representative of the appellant, and so on.   This instruction assumes to the jury that whoever the salesman was, he was empowered to make contracts binding on his principal.   For the instruction to say "by fraudulently inducing defendant" is not sufficient; but it should add the element of material representations, or the element of trust relation to appellee, or the element of wilfully withholding material information that was not in the possession of the appellee or the idea that appellee was caused by appellant's agent not to have opportunity to investigate the terms of the contracts and know its meaning.   And the instruction fails to include the necessary idea that if you believe that fraudulent representations were made by appellant's agent, that were relied on by appellee, and that appellant "had knowledge of."

On the third assignment of error I respectfully submit that there is no sufficient evidence in the record of the

evidence to sustain such an instruction. The attempt made by the appellee in the court below to prove a settlement of the account here sued on utterly fails when we view all the evidence for the appellee. If any settlement was made, Mr. Cameron, a witness for appellee, says it was made between an agent by the name of Wright, representing appellant, and by Mr. F. A. May, representing the appellee. Witness Cameron did not have the settlement, and only claims that he himself heard only part of the conversation; but Cameron had a conversation with another agent of appellant, to whom a tender of the patterns was made. On the other hand Mr. F. A. May, witness and agent for appellee, says positively that the alleged agent, Wright, stated clearly that whatever settlement they proposed would have to be referred to the home office of the appellant for approval. In my statement of facts I have quoted his exact language. If the testimony of May on this point is taken most strongly in favor of appellee the conclusion is inescapable that Wright had absolutely no authority to settle this large debt in any such way as has been contended by appellee. My objections to all this testimony and my motion to exclude the evidence on this point were all overruled by the circuit judge. Although the attempt to prove the agency of the alleged agent Wright was confined solely to the oral statement of Wright, yet the court granted this instruction, which I think violates the rule on proving agency outright. *Railroad Company v. Cocke,* 64 Miss. 713; *Kinnare v. Gregory,* 55 Miss. 615; 10 Ency. Evidence, page 15, and citations from many states.

The burden of proving the agency of Wright rests on the appellee, who alleged the agency. *Life Insurance Co. v. O'Dom,* 100 Miss. 218. If it be contended that some other agent came to the appellee and made statements to it about the proposed settlement, then I contend that the oral settlement or admissions of agency by such other alleged agent are inadmissible, in view of

the holdings in the above cited decisions and in *Rumbough* v. *Southern Imp. Co.,* 17 S. E. 536, 34 Am. St. Rep. 528.

If my contentions as above presented are correct, then a reversal of the case will be ordered.

*Brady & Dean,* for appellee.

The proof is absolutely undisputed on the question of the wily inducements held out before Mr. F. F. Parsons, to get him to take the large stock of patterns which the agent wanted him to take.  Appellant had full opportunity to take the depositions, or procure the attendance, of the respective agents who visited Brookhaven to secure, in the first place, and later replace this contract, and did not do so.  That contract, so fearfully and wonderfully constructed, is guaranteed to give a week's headache to any one who will sit down and try to dissect, masticate and digest it.  Mr. Cameron stated that when he later tried to have an agent interpret it to him, he could not do so himself.  Bear in mind that, according to the method pursued by this concern, the contract is placed in the form of an "order," the McCall Company thus trying to beat the devil around a stump, and throw the responsibility upon the very person, firm or corporation whom they were trying to inveigle into handling their patterns.  The agent, therefore, sat down by Mr. Parsons and explained to him just what that instrument meant, explained the standing credit, so clearly and kindly worked out by him, explained how he would get full credit for returned patterns, leading him to believe that his account would thus be reduced, instead of his losing the value of patterns against which he did not order duplicates and thus, by false and fraudulent representations induced Mr. Parsons to affix his signature to the "order," after which a duplicate was returned to Mr. Parsons who glanced through it and laid it away, leaving the matter to the honesty of the McCall Company, and making remittances monthly as called upon by them, until business

reverses made it imperative that the pattern department be dropped, when, for the first time, the company stepped out into the open.

There is no issue raised by the testimony on this point, but if there was, then the jury has resolved it in appellee's favor. It is not a question of "dealer's talk," of varying the terms of written instruments; it is a question of false representations going to the heart of a contract during the five years of its existence.

Appellee secured only two instructions from the court, while appellant secured five. All of the objections noted against the instructions granted appellee, even if they really existed, were fully covered by the instructions granted appellee, even if they really existed, were fully covered by the instructions granted appellant, and the instructions must be construed together. The law was properly announced to the jury, so far as appellee's instructions went.

Wright's agency is not proved merely by his own statements. Nor is the agency of the other so proved. The Parsons, May, Oberschmidt Company wrote to the McCall Company to make other arrangements about their supply of patterns, and that company promptly sent its representative. Every circumstance pointed to his capacity to act, and he proceeded to elucidate the mysteries of that contract order, putting upon doubtful terms and phrases the interpretation calculated to induce Mr. Parsons to sign it, and upon these representations Mr. Parsons relied and acted. The jury found that he was such an agent, and found that the McCall Company was under obligations to take patterns to the amount of two hundred and fifty dollars, which were tendered into court, and this finding was correct.

Upon defendant and appellee's alternate theory of defense, the making of the new contract, the verdict denying appellant recovery of this item of two hundred and fifty dollars is likewise correct. This testimony not only

goes to prove the correctness of Mr. Parson's contention regarding the terms of the original contract, but in itself relieves appellee of liability, at least to the amount of two hundred and fifty dollars. An unbiased reading of the testimony of F. A. May, quoting against Wright, will show the justice of this finding. Mr. May testified as follows: "He says this: I'll write it to my company and have them to send you a contract down for this business. It will be all right with them, but I'll get it in writing from them and have them send you a contract, as we have agreed on."

Following their (apparently) usual custom, the Mc-Call Company endeavored to slip in another agreement on May & Cameron, but taught by their former experience they refused to bite. At that time, as the agent told them and as the correspondence with Seavey shows, a contract had already been entered into with A. C. Seavey & Sons, and May & Cameron were asked to take the contract over only until August. Then when The McCall Company tried to "slip one over" on A. C. Seavey & Sons, and give them the Parsons, May, Oberschmidt Company patterns, Seavey balked, and the McCall Company tried to "rue back."

For a third reason, which this court will consider, although the lower court did not, this judgment must be affirmed as to the two hundred and fifty dollars namely, the illegality of this contract under the anti-trust laws of the state of Mississippi, in chapter 140 of the Code of 1892 and chapter 145 of the Code of 1906.

This is a suit on the contract. The declaration could not have been drawn more specifically upon this point, and it even uses the word "debt on contract." In his brief, following the decision in *McCall Company* v. *Hughes*, 59 So. 794, appellant's counsel endeavors to forget the language of the declaration and treat the suit as one on open account. Appellee still has his remedy separate from the contract, but he cannot sue on con-

tract and recover on open account. In any view of this case, the verdict of the jury, and the judgment of the court, as to the two hundred and fifty dollar item was correct, and should be affirmed by this court.

Smith, C. J., delivered the opinion of the court.

On the 12th day of September, 1905, a contract was entered into between appellant and appellee, the parts of which material to this controversy are as follows:

"The McCall Company, New York, N. Y.

"Please deliver to . . . at New York City, addressed to us a stock of McCall Patterns, at the uniform price of seven and one-half cents for each pattern (excepting those retailing for ten cents, the price of which is five cents each), amounting to four hundred and ten dollars and twenty-four cents net, including the November issue, one hundred and sixty-four dollars and twenty-four cents payable thirty days after shipment, and the balance, two hundred and fifty dollars is to remain as a standing credit during the term of this contract order, upon which interest is to be paid by us at the rate of five per cent per annum, semiannually, January and July 1; also ship us each month by . . . not exceeding an average of twenty-five dollars per month of your selection of the new monthly patterns, at same price as above, commencing with December issue; also Fashion Sheets and other publications in quantities, and at prices specified below, during the term of this contract, commencing with November issue.

.    .    .    .    .    .    .

"We will reorder at the prices above named, once each week, or oftener, all patterns sold, thus keeping patterns on hand as above specified. The patterns are not to be sold for other than catalogue retail prices, and the stock of patterns is to be kept and offered for sale on the first (main) floor. We will send you an inventory of our stock of patterns on hand at your request, not exceeding twice each year.

"All goods ordered for delivery are to be paid for on or before the 5th day of the month succeeding date of shipment; if not then paid, subject to sight draft. All prices quoted are net.

"We will not sell any other patterns than the McCall Patterns received from you during the term of this contract order.

"We will not transfer the stock of McCall Patterns from Brookhaven, Mississippi, without your written consent, and will pay all transportation charges to and from your New York office.

"Discarded Patterns.

"All patterns purchased from you under this contract order that are reported discarded by you semiannually— January and July—can be returned by us at one hundred per cent contract price, in exchange for other patterns at full contract price, at any time within sixty days from the date such discarded patterns are respectively reported by you, provided this contract shall be in force at the time of such return. All patterns returned by us under any such discard report are to be credited to a special account, to be known as our discard exchange account, the credit to same to continue for a period of six months from the date of such discard report unless this contract shall be sooner terminated; and all patterns ordered by us within such period of six months while this contract is in force, excepting our monthly standing order, shall be charged to such discard exchange account unless our credit to the same is earlier exhausted."

The contract further provided that it should remain in force for five years.

Several months prior to the expiration of the five years for which this contract was to run, appellee decided to discontinue business, and so advised appellant. At that time there was a considerable balance due appellant, and, in addition, under the contract it was entitled to ship and

to receive payment from appellee for the several monthly shipments of patterns thereafter to be made as provided for in the contract. Appellant sent one of its agents, a Mr. Wright, to see what adjustment of the matter could be made with appellee, but nothing tangible resulted from his efforts. Afterwards this suit was instituted in the court below to recover from appellee the sum of three hundred and eighteen dollars and sixty-eight cents, the amount alleged by appellant to be due it under the contract. Two hundred and fifty dollars of this amount was the standing credit referred to in the contract, and the remainder was the balance due on the monthly shipments of patterns. To appellant's declaration appellee pleaded the general issue, and gave notice of special facts to be set up in bar of appellant's claim, and also a special plea, setting up practically the same facts as contained in the notice. The defense thus set forth is that in so far as the two hundred and fifty dollars is concerned, appellant does not owe it, for the reason that it was "understood and agreed that defendant was not to pay said sum, but was to take patterns to that amount, over and above what were paid for in cash, was then to pay interest on their value, and plaintiff would, at the expiration or breach of said contract, retake patterns from the stock in defendant's possession to the value of two hundred and fifty dollars;" and in so far as the remainder of the account is concerned, appellee has more than paid it, for the reason that it had returned to appellant at various times discarded patterns worth, under the terms of the contract, more than this balance claimed to be due. Judgment over was requested against appellant for the amount claimed to have been so paid it in excess of the amount due. The cause was submitted to the jury and a verdict rendered for appellant in the sum of one hundred and eighteen dollars and sixty-eight cents. Both parties being dissatisfied with this result, each filed a motion for a new trial, and upon the overruling thereof

each has appealed to this court, appellant by direct and appellee by cross-appeal.

Over the objection of appellant, Mr. Parsons, a member of appellee corporation, and who seems to have entered into the contract with appellant, on behalf of appellee was permitted to testify that the agent who represented appellant in the execution of the contract told him, at the time the contract was executed, that the words, "standing credit," in the contract meant that appellees would not be called upon to pay the sum of two hundred and fifty dollars designated therein as standing credit, but that at the expiration or discontinuance of the contract appellant would accept in settlement thereof patterns of the value of two hundred and fifty dollars. This evidence should not have been admitted, for the reason that it was simply an attempt to vary by parol the terms of a plain and unambiguous contract. This feature of appellee's defense was presented to the jury by means of the following instruction:

"The court instructs the jury for the defendant that if they believe the defendant was induced to sign the contract by false representations made by plaintiff's legal representative empowered to make contracts for fraudulently inducing defendant to sign the contract, they will find a verdict for the defendant."

And appellee's counsel place the competency of the evidence not so much upon a right in appellee to show by parol what the parties to this contract at the time of its execution understood to be the meaning of that clause of the contract here under consideration, but upon the ground that appellee was induced to enter into the contract by reason of the false and fraudulent statement of appellant's agent that under the terms of the contract appellee could not be called upon to pay the two hundred and fifty dollars in money, but could only be called upon to deliver to appellants patterns of that value, and that on account of this fraud perpetuated upon appellee it is

released from the obligation of that portion of the contract. There is no merit in this contention. The same argument can always be made when it is sought to vary a contract by parol on the ground that the parties thereto placed a construction upon it at variance with its plain meaning.

Another of appellee's instructions was that:

"The court instructs the jury for the defendant that if they believe from the evidence that the contract between the plaintiff and defendant was by mutual consent terminated, and the defendant's tender of patterns on hand accepted in settlement of its debt, then their verdict will be for the defendant."

This instruction was based upon the evidence of the attempted settlement of this controversy by appellant's agent, Wright. The testimony on this point was that Wright, appellee, and the firm of May & Cameron entered into an agreement that appellees should be released from all liability to appellant, that its stock of patterns should be turned over to May & Cameron, who would assume appellee's liability therefor and carry out appellee's contract after certain modifications had been made therein, and that this agreement would have been carried out by May & Cameron had it not been violated by appellant. Conceding that appellant's agent was authorized to enter into a contract of this character, and to thereby release appellee from further liability, the evidence clearly discloses that he did not assume any such authority. While such a contract was agreed upon and reduced to writing, it was to be submitted to appellee for approval. This was done, and it was signed by appellant and returned for appellee's and May & Cameron's signature. For the reason that in their judgment the contract as written was different from the one agreed upon with Wright, both appellee and May & Cameron refused to sign it, so that it never became operative, and consequently appellee was not released from liability thereby. The instruction therefore, should not have been given.

One of appellee's contentions on the cross-appeal is that it has not received the proper credit for discarded patterns returned to appellant under the last clause of. the contract, which reads as follows:

"All patterns purchased from you under this contract order that are reported discarded by you semiannually— January and July—can be returned by us at one hundred per cent contract price, in exchange for other patterns at full contract price, at any time within sixty days from the date such discarded patterns are respectively reported by you, provided this contract shall be in force at the time of such return. All patterns returned by us under any such discard report are to be credited to a special account, to be known as our discard exchange account, the credit to same to continue for a period of six months from the date of such discard report unless this contract shall be sooner terminated; and all patterns ordered by us within such period of six months and while this contract is in force, excepting our monthly standing order, shall be charged to such discard exchange account unless our credit to the same is earlier exhausted"

—and upon the testimony of one of appellant's employees, which was to the effect that at various times appellee returned to it discarded patterns the value of which was in each instance credited to the special exchange account provided for by the contract, and that on several occasions appellee failed to order a sufficient number of new patterns to exhaust its credit for those returned before such credit lapsed under the terms of the contract. Appellee's claim is that it is entitled to have the difference between the value of all patterns returned by it and of the new patterns ordered credited on its indebtedness for the patterns originally purchased by it, and the amounts due by it for the patterns shipped to it under the regular monthly order provided for in the contract. There can be no merit in this contention, for the contract in express language provides otherwise.

Another of appellee's contentions is that since this contract contains the following clause:

"We will not sell any other patterns than the McCall Patterns received from you during the term of this contract order"

—it is illegal and void under our anti-trust statutes, and therefore that appellant cannot recover the value of the patterns sold and delivered under it. Granting that this provision of the contract violates our anti-trust laws, it has been expressly held in *McCall* v. *Hughes,* 102 Miss. 375, 59 So. 794, 42 L. R. A. (N. S.) 63, that appellee is not released thereby from the payment of the amount due by it for the patterns received.

*Reversed and remanded.*